IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| HEATHER TILLMAN, | ) | CASE NO. 1:19-CV-02810 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action by Heather Tillman under 42 U.S.C. § 405(g) seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Tillman's 2016 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Christopher A. Boyko. ECF No. 14.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.

1

initial[5] and procedural[6] orders, the parties have filed briefs,[7] together with supporting charts[8] and fact sheets.[9] The parties have also met and conferred with the objective of reducing and/or clarifying the issues in dispute[10] and have participated in a telephonic oral argument.[11]

For the following reasons the decision of the Commissioner will be affirmed.

**Facts**

The ALJ's Decision

Tillman, who was born in 1947,[12] is a high school graduate[13] with past relevant work experience as a medical biller and receptionist, performed as sedentary and low-level semi-skilled.[14] She lives with her nineteen year-old daughter and does not like to leave her home.[15]

The ALJ found that Tillman has the following severe impairments:

Cervical degenerative disc disease with radiculopathy; lumbar degenerative disc disease and stenosis with radiculopathy; status post L5-S1 fusion; right shoulder

---

[5] ECF No. 5.
[6] ECF No. 12.
[7] ECF Nos. 18 (Tillman), 21 (Commissioner).
[8] ECF Nos. 18, Attachment (Tillman), 21, Attachment (Commissioner).
[9] ECF No. 17 (Tillman).
[10] ECF No. 22.
[11] ECF No. 24.
[12] Tr. at 34.
[13] *Id*. at 50.
[14] *Id*. at 60.
[15] *Id*. at 18.

degenerative joint disease; bilateral knee/foot degenerative joint disease; obesity; depressive disorder, and anxiety disorder.[16]

After determining that no impairment or combination of impairments met or equaled a listing,[17] the ALJ found that Tillman has residual functional capacity (RFC) for light work with the following restrictions:

> She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. [She] can occasionally balance, stoop, kneel, crouch and crawl. [She] is limited to no overhead reaching with the right upper extremity. [She] is limited to frequent handling and figuring with the right upper extremity. [She] should avoid all exposure to hazards, such as dangerous machinery and unprotected heights. [She] is limited to simple, routine tasks with no strict time demands, no strict production quotas, no more than simple work instructions and decisions, and no more than minimal or infrequent changes in the work setting. [She] is limited to occasional interactions with supervisors, coworkers and the public.[18]

After reviewing the clinical and opinion evidence, along with Tillman's activities of daily living,[19] the ALJ concluded that Tillman's complaints were "not fully consistent" with the record and the she could perform work as set out in the RFC, but that she could not perform any past relevant work.[20]

Relying on the testimony of a vocational expert (VE), the ALJ then found that given Tillman's age, education, work experience and RFC, she could perform the functions office helper, housekeeping cleaner, and mail clerk, and that a significant number of jobs were

---

[16] *Id*. at 12.
[17] *Id*. at 14-17.
[18] *Id*. at 17.
[19] *Id*. at 18-33.
[20] *Id*. at 33.

3

available for these positions within the national economy.[21] Accordingly, Tillman was found not disabled.[22]

### Tillman's Position

Tillman essentially raises three issues. First, that the ALJ erred by giving little weight to the opinions of Dr. Margaret Petrone, Ph.D., Tillman's treating psychologist from 2013 to 2016,[23] and by neither evaluating nor assigning weight to the opinion, contained in treatment notes, of Dr. Francis McCafferty, M.D., who treated Tillman in 2016.[24] Next, she argues that the ALJ erred in his evaluation and assignment of weight regarding the opinions of four examining physicians: Dr. Ranjan,[25] Dr. Zerba,[26] Dr, Patel and Dr. Rindsberg.[27] Finally, she maintains that substantial evidence does not support the RFC, specifically that she can perform light work.[28] In particular, she argues that her disc disease, and knee/foot degenerative joint disease so restrict her ability to stand and/or walk for six hours in an eight-hour workday that she could not perform light work.[29]

### Commissioner's position

---

[21] *Id*. at 34-35.
[22] *Id*. at 35.
[23] ECF No. 18 at 24-28.
[24] *Id*. at 28-29.
[25] *Id*. at 30-31.
[26] *Id*. at 31.
[27] *Id*. at 31-33.
[28] *Id*. at 33.
[29] *Id*. at 33-37.

The Commissioner contends first that the ALJ reasonably assessed the notes and/or opinions from the medical sources that evaluated her under the Ohio worker's compensation standard.[30] Further, he argues that substantial evidence supports the finding that Tillman can do light work.[31] To that point, the Commissioner notes that the ALJ found that Tillman's statements about the limiting effect of her impairments were not credible and that he gave great weight to the functional opinion of two state agency reviewers who found Tillman was capable of light work, with exceptions.[32] Moreover, the Commissioner observed that in addition to largely adopting the functional opinions of the state agency reviewers into the RFC, the ALJ added additional restrictions to the RFC to account for evidence developed after the state agency reviewers submitted their opinions.[33]

**Analysis**

As noted, Tillman has raised three issues, which are considered in sequence.

1. <u>Weight given to treating physicians Drs. Petrone and McCafferty</u>

Dr. Margaret Petrone, Ph.D. is Tillman's treating psychologist.[34] The record contains eight notes and/or opinions from Dr. Petrone from the period February 2013 until November 2016.[35] The ALJ specifically discussed treatment notes from Dr. Petrone from:

---

[30] ECF No. 21 at 3-9.
[31] *Id*. at 9-13.
[32] *Id*. at 12.
[33] *Id*.
[34] *Tr*. at 1675.
[35] Id. at 1676-77, 1647-48, 1619-20, 1543-44, 1470-72, 1007-08, 515-16, 510-11.

5

(1) December 2013 showing "significant improvement" in "mood and functioning;"[36]

(2) July 2015 where Tillman reported to Dr. Petrone she wanted to discontinue psychiatric medications and Dr. Petrone felt Tillman's symptoms had improved to where she could begin vocational rehabilitation.[37]

The ALJ mentioned in general the numerous notes from Dr. Petrone that stated Tillman was temporarily totally disabled from engaging in gainful work.[38] The ALJ gave these opinions limited weight, finding that they were made in connection with a state worker's compensation claim that uses different standards and criteria from Social Security determinations and that the question of disability itself is a question reserved to the Commissioner.[39]

The ALJ then separately addressed the November 1, 2016 opinion from Dr. Petrone that stated that Tillman had only "minimal" restrictions on activities of daily living, "minimal" problems with social interactions, could "moderately" tolerate stress and opined that Tillman had "improved significantly" over the course of treatment.[40] The ALJ gave this opinion some weight, finding that Dr. Petrone is a treating source and that her opinion

---

[36] *Id.* at 21.
[37] *Id.* at 23.
[38] *Id.* at 28.
[39] *Id.*
[40] *Id.*

6

here is "partially supported" by "a narrative explanation" with "specific example" to support the conclusion.[41]

As to Dr. Petrone, the ALJ does specifically identify Dr. Petrone as a treating source.[42] Next, insofar as the opinions created for worker's compensation, I don't find that these opinions were ignored with a simple "gotcha" analysis.[43] Rather, the ALJ properly noted, as has the Sixth Circuit, that Ohio's Worker's Compensation system has a "different, less restrictive standard of disability than the [Social Security] Agency."[44] Thus, if an ALJ reasons that an opinion of disability based on the Worker's Compensation standard is not compelling evidence in a social security claim, such a statement "involves neither legal nor factual error, and is not grounds for a remand."[45]

As to Dr. McCafferty, the ALJ does not identify Dr. McCafferty as a treating source, but states that when Tillman "changed psychiatrists in 2016," Dr. McCafferty was the "new provider."[46] Normally, the analysis of a treating source opinion must begin with an acknowledgment that the opinion is from a treating source, by which the ALJ places the opinion under the proper standard of review.[47] But, in this case, as Tillman herself states,

---

[41] *Id.* at 29.
[42] *Id.* at 28-29.
[43] See, ECF No. 18 at 27 (citing *Daniels v. Comm'r of Soc. Sec.*, 2017 WL 5574001 (N.D. Ohio Nov. 20, 2017)).
[44] *Bayes v. Comm'r of Soc. Sec.*, 757 Fed. Appx., 436, 437 (6th Cir. 2018).
[45] *Carver v. Comm'r*, 2020 WL 8458801, at *14 (N.D. Ohio Oct. 5, 2020), R&R adopted by, 2021 WL 164219 (N.D. Ohio Jan. 19, 2021).
[46] *Id.*
[47] *Armstead v. Comm'r of Soc. Sec.*, 2018 WL 5267161, at *4 (N.D. Ohio Oct. 23, 2018) (citation omitted).

Dr. McCafferty did not offer "a traditional treating source opinion"[48] but functionally offered "opinion" within the context of his treatment notes and by assigning a GAF score. Tillman has not argued, nor have I located case authority, for the position that an ALJ errs as a matter of law for not identifying as a treating source opinion the treatment notes that are not in the form of an opinion.

That said, the ALJ extensively discussed Dr. McCafferty's treatment notes in the section of the opinion dealing with Tillman's medical history, observing in particular that in August 2016 Tillman was "generally functioning more than adequately."[49] Further, the ALJ also mentioned Dr. McCafferty's treatment note of September 2016, which said that although Tillman still had symptoms of anxiety, "her symptoms were controlled."[50] Finally, the ALJ noted that in October 2016, despite "some increase in psychiatric symptoms," Dr. McCafferty continued Tillman's medications without change.[51]

Moreover, despite Tillman's claim that the ALJ failed to address, as a medical opinion, the GAF scores given to her by Dr. McCafferty,[52] I note that the ALJ did assign little weight to the GAF scores, not as an "opinion" of Dr. McCafferty, finding, as a reason, that GAF scores do not have a standardized basis, but are subjective, and so need supporting detail.[53] That conclusion is not erroneous, as the Sixth Circuit has held that a

---

[48] ECF No. 18 at 28.
[49] Tr. at 25 (quoting record).
[50] *Id*.
[51] *Id*.
[52] ECF No. 18 at 29.
[53] Tr. at 31.

GAF score is a subjective assessment of functioning that may be useful in assessing a claimant's mental RFC, but is not "raw medical data" and the Commissioner has declined to endorse the use of a GAF score in the Social Security benefit program.[54]

That said, a GAF score of 41-50, which includes the 45 and 49 scores assigned to Tillman by Dr. McCafferty,[55] is generally considered to reflect the assessor's opinion that the claimant has serious symptoms or serious impairment of social or occupational functioning.[56] Still, the Sixth Circuit will not find that even a low GAF score such as Tillman's shows that the RFC was not supported by substantial evidence where, as here, the score was not accompanied by a suggestion from the assessor that the claimant could not perform any work and a VE testified that an individual with claimant's limitations could still perform a number of jobs.[57]

Accordingly, I find no error in the ALJ's treatment of the GAF scores given by Dr. McCafferty. Further, given the ALJ's analysis within his opinion of Dr. McCafferty's notes, including the embedded opinions about Tillman functioning more than adequately with symptoms largely under control, I do not find, as Tillman suggests, that the ALJ erred in failing to address Dr. McCafferty's opinions as to Tillman's functioning.

    2.    <u>Weight given to examining physicians</u>

---

[54] *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016).
[55] Tr. at 1245, 1070, 893.
[56] *Miller*, 811 F.3d at 836.
[57] *Id.* (citation omitted).

9

Tillman contends that the ALJ erred by giving little weight to the opinions of Drs. Ranjan, Zerba, Patel and Rindsberg.[58] In all four cases, Tillman again argues that the ALJ improperly reduced the weight given because the opinions at issue were produced in reference to an Ohio worker's compensation claim.[59]

But as stated above, an ALJ does not err by reducing the weight given to an opinion generated in the context of a state worker's compensation claim. Accordingly, the ALJ here did not err by citing their history of a connection with a worker's compensation claim in reducing the weight given to these four opinions.

Further, opinions from single time examining sources do receive less weight than those from treating sources,[60] and so it is not improper for the ALJ to consider the fact that Drs. Zerba, Patel and Rindsberg only examined Tillman once in connection with her worker's compensation claim as a reason for assigning less weight to their opinions.

3. Is the RFC supported by substantial evidence?

Essentially, Tillman argues that the RFC should have included additional restrictions due to slowed antalgic gait, widened stance and knee tenderness.[61]

In response, the Commissioner notes initially that the ALJ reviewed and commented on the medical evidence, observing first that although in Dr. Patel's single examination in

---

[58] ECF No. 18 at 30-33.
[59] *Id*.
[60] *Andres v. Comm'r or Soc. Sec.*, 733 Fed. Appx. 241, 245 (6th Cir. 2018).
[61] ECF No. 18 at 34-35.

2016 Tillman was described as having an antalgic gait and some tenderness of the left knee, Dr. Patel made no functional assessment as to these findings, only a conclusory statement that she was disabled.[62] But, the ALJ noted that at other times Tillman showed a normal gait and the ability to ambulate effectively, such as an April 2018 treatment note that found she did not need a cane or other assistive device.[63] Likewise, the ALJ pointed out that a 2015 examination by Dr. Louis Keppler, M.D., found that Tillman's stability, alignment and motor function were normal,[64] and that Tillman reported to Dr. Moufawad in 2016 that her knee braces were effective in reducing her knee pain when shopping or on her feet for periods of time.[65]

Moreover, the ALJ noted that Tillman's activities of daily living, such as shopping for groceries, cleaning her home, engaging in charity walks, keeping her appointments, driving, going to the tanning parlor, shopping at the mall and taking her daughter to school all "contrast starkly" with Tillman's testimony about being extremely limited in her activities.[66] It is not error for the ALJ to consider activities of daily living in formulating the RFC,[67] nor to diminish the credibility of the claimant as to the limiting effects of her symptoms when that testimony is inconsistent with medical reports and other evidence.[68]

---

[62] Tr. at 29-30.
[63] Id. at 33.
[64] *Id*. at 23.
[65] *Id*. at 24.
[66] *Id*. at 32.
[67] *Averweg v. Comm'r*, 2019 WL 4346265, at **4-5 (N.D. Ohio Sept. 12, 2019) (citations omitted),
[68] *Winning v. Comm'r*, 661 F. Supp.2d 807, 822-23 (N.D. Ohio 2009) (citations omitted).

Finally, and most importantly, the ALJ gave considerable weight to the functional opinions of two state agency reviewers, while also finding that Tillman was slightly more limited in her functioning than was opined by the reviewing sources who did not have later evidence available.[69] In this regard, the ALJ properly considered and relied upon the opinions of state agency reviewing sources and then correctly took into account relevant evidence that was developed after the state agency reviewers submitted their opinions.[70]

In sum, I find that substantial evidence supports the finding in the RFC that Tillman can do light work with some additional restrictions.

IT IS SO ORDERED.

Dated: March 29, 2021                                     s/William H. Baughman Jr
                                                          United States Magistrate Judge

---

[69] *Id*. at 27.
[70] *McGrew v. Comm'r*, 343 Fed. Appx. 26, 32 (6th Cir. 2009).